IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| GILBERT VISCONDE, | ) | CIVIL NO.  04-00595 JMS/KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING |
| | ) | DEFENDANT'S MOTION FOR |
| DANIEL THORNTON, in his | ) | SUMMARY JUDGMENT |
| individual capacity, and CITY AND | ) | |
| COUNTY OF HONOLULU, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

I.  INTRODUCTION

Honolulu Police Department (HPD) Officer Daniel Thornton has

moved the court for summary judgment as to Plaintiff Gilbert Visconde's

Complaint.  Based on the following, the court GRANTS the Defendant's motion

as to the Plaintiff's 42 U.S.C. § 1983 claim and DISMISSES the Plaintiff's state

law assault and battery claim.

II.  BACKGROUND

On June 30, 2004, Visconde emerged from the home of his employer,

Nelson Aguinaldo, to discover that his white Nissan pickup truck was gone.  Just

after 3:00 p.m., Aguinaldo called the police to report that Visconde's truck had

been stolen.  Approximately thirty minutes later, Aguinaldo left his house to go

pick up his children and instructed Visconde to remain in the house.  A few

minutes later, though, Aguinaldo saw Visconde's truck nearby, along with a man

taking tools and equipment out of the truck.  The man then got into a different

white truck and drove away.  Aguinaldo called Visconde to tell him that he found

Visconde's truck; since the police had still not arrived at Aguinaldo's house,

Aguinaldo told Visconde to come to where the truck was.  At 3:45 p.m.,

Aguinaldo called the police to tell them that he had located the truck.  Aguinaldo

also gave the police the license plate number of the suspect's truck.

   Visconde and his co-worker, Abraham Ceredon, left Aguinaldo's

house and drove to the spot where Visconde's truck had been found.  They parked

their car behind Visconde's truck and proceeded to inspect the truck to see if

anything was missing.

   At about 3:45 p.m., while patrolling a nearby area, Officer Thornton

received the dispatch regarding Visconde's truck.  Dispatch informed Officer

Thornton that the owner located the truck near a park and that there was a man

sitting inside the truck.  Officer Thornton asked Dispatch to confirm that the

suspect was in the vehicle, and Dispatch confirmed that this was true.  Although

Dispatch provided a description of the vehicle and the license plate number, no further details were provided about the suspect beyond his gender.

Officer Thornton drove up Aiea Heights Drive to where the stolen vehicle was last reported to be.  On the way, Officer Thornton saw a male driver and female passenger in a parked, white van frantically pointing up towards Manako Street.[1]  Based on these urgent gestures, Officer Thornton believed that the two individuals were pointing in the direction of the stolen vehicle.  Officer Thornton turned onto Manako Street, where he spotted Visconde's truck as matching the description and license plate number provided by Dispatch.  Officer Thornton also saw two individuals (later identified as Visconde and Ceredon) walking around the curb side of the vehicle.  Thinking that these men were potential suspects in the vehicle theft, Officer Thornton stopped his car next to Visconde's truck.

At this point, the parties' versions of the facts diverge, though only slightly.

According to Visconde, Officer Thornton immediately began yelling and pointing his gun at Visconde and Ceredon.  Visconde claims that he put his

---

[1] The individuals in the white van were later identified as Aguinaldo and his wife, Maribel Aguinaldo.  Officer Thornton claims that, based on the circumstances and the conduct of the two individuals, he believed that Mr. and Mrs. Aguinaldo were the owners of the stolen Nissan pickup truck.

hands up and identified himself as the owner of the truck, but that Officer Thornton refused to listen and continued to yell.  Because he could not understand what Officer Thornton was saying,[2] and because he was frightened of the gun being pointed at him, Visconde began to move away from the truck.[3]  As he did so, Officer Thornton "violently kneed him in the right thigh and side[,] causing him to fall down in the street on his left shoulder and left arm and back."  Complaint at 3.  At that point, Aguinaldo informed Officer Thornton that Visconde was in fact the owner of the truck.  According to Visconde, Officer Thornton finally became calm and apologized to him.

Officer Thornton claims that he did not recognize Visconde or Ceredon, and upon arriving at the scene believed that they were suspects in the theft of Visconde's truck.  Officer Thornton withdrew his gun and shouted, "Halt! Police!"  Both continued to walk, although Ceredon slowed down.  Officer Thornton then ordered Visconde and Ceredon to get down on the ground.

---

[2] Visconde's declaration states that because of Officer Thornton's "slang," Visconde did not understand what Officer Thornton wanted him to do.  In a July 15, 2004 statement to the Honolulu Police Commission, Visconde made a similar remark; the HPD investigator asked Visconde what he meant, and Visconde said, "Slang, just like how they talk.  All the Black, how they talk . . . ."  Visconde's 7/15/04 Statement to Investigator Borges (Visconde Statement) at 12-13.

[3] During the January 30, 2006 hearing, the court asked Visconde's counsel if there was a factual dispute as to whether Visconde was moving or still at the time Officer Thornton confronted him.  Visconde's counsel clarified that, although Visconde was moving, he was not attempting to flee.

Ceredon immediately got down on the ground, but Visconde did not.  Officer

Thornton repeated his command to Visconde to get on the ground two more times,

but Visconde did not respond.  Officer Thornton claims that he could not see

Visconde's left hand and that Visconde continued to move away from the truck;

Officer Thornton states that he feared Visconde had a weapon or was planning to

flee the scene.  Officer Thornton then struck Visconde with his knee and right

forearm, causing Visconde to fall to the ground.  Officer Thornton claims that he

employed the knee strike as "the best method of neutralizing the suspect and his

possible use of any weapon."  Thornton Declaration at 5.

      Aguinaldo's version of events is substantially similar to that of

Visconde and Officer Thornton.  On September 17, 2004, Aguinaldo gave a

statement to the Honolulu Police Commission in which he recounted the

afternoon's events as follows:  When Officer Thornton was driving to the scene

and stopped to speak with Aguinaldo and his wife, he (Aguinaldo) told Officer

Thornton that the truck was on Manako Street and that the owner was "waiting far

away from the truck."  Aguinaldo's 9/17/04 Statement to Investigator Borges

("Aguinaldo Statement") at 50.  Aguinaldo did not tell Officer Thornton that the

suspect was in the area.  Aguinaldo drove down Manako Street, and Officer

Thornton followed him.  When he got out of his car, he saw Officer Thornton in

his police car pointing his gun at Visconde.  Aguinaldo tried to tell Officer

Thornton that Visconde was the owner of the car, but because Officer Thornton

was yelling at Visconde to get down, Aguinaldo also started yelling at Visconde to

get down;  Aguinaldo does not know whether Officer Thornton would have been

able to hear him.  According to Aguinaldo, Visconde did not put his hands in the

air and "was just frozen."  Aguinaldo Statement at 53.  After Officer Thornton got

out of the car and kicked Visconde, Aguinaldo told Officer Thornton that

Visconde was the owner of the car.  At that point, Officer Thornton apologized

and told Visconde that "'[w]hen an officer tells you to get down, get down.'"

Aguinaldo Statement at 55.

            In sum, the only disputed factual issues are whether Visconde put his

hands in the air and whether Officer Thornton heard Aguinaldo state that

Visconde was the owner, rather than the suspect.  Both Visconde and Officer

Thornton agree that Visconde was moving away from the truck.  Everyone agrees

that Officer Thornton was yelling at Visconde; Visconde claims that he did not

understand Officer Thornton, but both Aguinaldo and Officer Thornton agree that

Officer Thornton was instructing Visconde to get down on the ground.

Furthermore, there is no evidence to suggest that, before he arrived on the scene,

Officer Thornton knew that Visconde would be standing right next to the truck;

instead, the undisputed evidence indicates that Officer Thornton had been told that Visconde, the owner, was "far away" from the truck and that the suspect was in the truck.

Visconde claims that he suffered severe injuries as a result of Thornton's conduct, including a "deep contusion of the tissues and muscles" in his right thigh, bruising on his left shoulder and arm, and a "sprain to the right side of his body and lower back."  Complaint at 5.

On September 30, 2004, Visconde brought this action against Officer Thornton and the City and County of Honolulu,[4] seeking compensatory and punitive damages for unlawful seizure in violation of the Fourth Amendment and for common law assault and battery.  In response, the Defendants filed separate motions for summary judgment.  On November 7, 2005, the court heard arguments on the motions.  The court granted Visconde's request for a continuance, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, to depose Aguinaldo. Plaintiff's counsel conducted the deposition on November 28, 2005.  At the deposition, Aguinaldo again stated that he told Officer Thornton that Visconde was "waiting far away from the truck."  Aguinaldo's 11/28/05 Deposition

---

[4] On December 27, 2005, the parties filed a stipulation for dismissal with prejudice as to the City and County of Honolulu.

("Aguinaldo Deposition") at 16.  Aguinaldo also reiterated that when he saw

Officer Thornton pointing the gun at Visconde, he (Aguinaldo) tried telling

Officer Thornton that Visconde was the owner of the car.  Aguinaldo Deposition

at 17-18.

The parties filed supplemental memoranda in December 2005 and

January 2006, and the court heard arguments on January 30, 2006.  Officer

Thornton claims the defense of qualified immunity as to all of Visconde's claims.

After reviewing the moving papers, the supporting and opposing memoranda, and

the arguments of counsel, the court GRANTS the Defendant's motion.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The primary purpose of summary judgment is to identify and dispose

of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S.

317, 323-324 (1986).  The burden initially lies with the moving party to show that

there is no genuine issue of material fact.  *T.W. Elec. Serv., Inc. v. Pac. Elec.*

*Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987).  Nevertheless, "summary

judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (quoting *Celotex*, 477 U.S. at 322).

## IV.  <u>ANALYSIS</u>

In his motion for summary judgment, Officer Thornton seeks qualified immunity from the § 1983 and state law claims.  Officer Thornton also contends that punitive damages are not warranted in this case because no evidence of malice exists.  The court first addresses Visconde's § 1983 claim and concludes that Officer Thornton is entitled to qualified immunity.  The court then turns to Visconde's state law claim and concludes that it should be dismissed for lack of subject matter jurisdiction.  Consequently, the court need not address the arguments related to punitive damages.

A.    <u>Officer Thornton is entitled to qualified immunity as to Visconde's § 1983 claim</u>

Where a defendant seeks qualified immunity, "a ruling on that issue should be made early in the proceedings" because the privilege provides "an immunity from suit rather than a mere defense to liability."  *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

> In ruling on a qualified immunity defense, a court must consider two questions. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This first prong of qualified immunity thus mirrors the substantive summary judgment decision on the merits. Second, if the plaintiff has alleged a deprivation of a constitutional right, a court "is to ask whether the right was clearly established." *Id.* The plaintiff bears the burden of showing that the right at issue was clearly established under this second prong. *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993).

*Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). The Supreme Court has

recently clarified this test:

> When confronted with a claim of qualified immunity, a court must ask first the following question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S., at 201, 121 S.Ct. 2151. . . . [C]laims of excessive force are to be judged under the Fourth Amendment's " 'objective reasonableness' " standard. [*Graham v. Connor*, 490 U.S. 386,] 388, 109 S.Ct. 1865.
>     . . . .
> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted. *Saucier v. Katz*, 533 U.S., at 206, 121 S.Ct. 2151 (qualified immunity operates "to protect officers from the sometimes 'hazy border between excessive and acceptable force' "). Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's

conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

It is important to emphasize that this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*, at 201, 121 S.Ct. 2151.  As we previously said in this very context:

> "[T]here is no doubt that *Graham v. Connor*, *supra*, clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. Yet that is not enough. Rather, we emphasized in *Anderson* [v. *Creighton*,] 'that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' 483 U.S. [635,] 640[, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)]. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*, at 201-202, 107 S.Ct. 3034.

*Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004) (per curiam) (some alterations in original and some added).  The court concludes that Officer Thornton did not violate Visconde's constitutional rights.  Nevertheless, even if Officer Thornton had violated Visconde's constitutional rights, the court concludes that the unlawfulness of the conduct would not have been clear to a reasonable officer in Officer Thornton's position.  The court therefore GRANTS summary judgment as to Visconde's § 1983 claim.

The court examines each prong of the qualified immunity

analysis in turn.

\\

\\

### 1.    Officer Thornton's conduct did not violate Visconde's constitutional rights

Claims of physically abusive governmental conduct involve

"either the Fourth Amendment's prohibition against unreasonable seizures

of the person, or the Eighth Amendment's ban on cruel and unusual

punishments." *Graham*, 490 U.S. at 394.  In the instant case, Visconde

alleges that his Fourth Amendment rights have been violated; the validity of

Visconde's claim must be determined "by reference to the specific

constitutional standard which governs that right, rather than to some

generalized 'excessive force' standard." *Id.*

> All claims of excessive force, whether deadly or not, are
> analyzed under the objective reasonableness standard of the
> Fourth Amendment as enunciated in *Graham* and [*Tennessee v.
> Garner*, 471 U.S. 1 (1985)].  "Determining whether the force
> used to effect a particular seizure is reasonable under the
> Fourth Amendment requires a careful balancing of the nature
> and quality of the intrusion on the individual's Fourth
> Amendment interests against the countervailing governmental
> interests at stake." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865
> (internal quotation marks omitted).  This balancing test entails

12

> consideration of the totality of the facts and circumstances in the particular case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

*Blanford v. Sacramento County*, 406 F.3d 1110, 1115 (9th Cir. 2005).

The doctrine of qualified immunity "allows ample room for reasonable error on the part of the official. It encompasses both mistakes of fact and mistakes of law." *Rudebusch v. Hughes*, 313 F.3d 506, 514 (9th Cir. 2002) (citations, brackets, and internal quotation signals omitted). Officer Thornton claims that he made a reasonable mistake of fact (believing that Visconde was the suspect in the vehicle theft, rather than the owner of the vehicle) in making his decision that the use of force was justified. Whether this mistake was justified goes to the question of whether Visconde's constitutional rights were violated. *See Stephenson v. Doe*, 332 F.3d 68, 78 (2d Cir. 2003) ("[C]laims that an officer made a reasonable mistake of fact that justified the use of force go to the question of whether the plaintiff's constitutional rights were violated[.]"); *Milstead v. Kibler*, 243 F.3d 157, 165 (4th Cir. 2001) ("[A] mistaken understanding of the facts that is reasonable in the circumstance can render a seizure based on that understanding reasonable under the Fourth Amendment.").

13

Given the standard for determining whether a Fourth

Amendment violation has occurred, and looking at the facts in the light

most favorable to Visconde, the court concludes that Officer Thornton's

actions were reasonable as a matter of law and that Visconde's

constitutional rights were not violated.  Based on the totality of the

circumstances, including "the severity of the crime at issue, whether the

suspect pose[d] an immediate threat to the safety of the officer[] or others,

and whether he [wa]s actively resisting arrest or attempting to evade arrest

by flight," the court concludes that Officer Thornton used non-lethal force

in a reasonable manner.  *Graham v. Connor*, 490 U.S. 388, 396 (1989).

Officer Thornton's display of his firearm was reasonable.  The

court recognizes that an officer's display of a firearm can constitute

"excessive force" in some circumstances.  *See*, *e.g.*, *Robinson v. Solano*

*County*, 278 F.3d 1007, 1014-15 (9th Cir. 2002) (pointing firearms at

unarmed suspect accused of a misdemeanor was a violation of the suspect's

Fourth Amendment rights).  There is no dispute that, at the moment Officer

Thornton arrived on the scene, all the information available to him strongly

suggested that the two men by Visconde's truck were suspects:  Dispatch

had said that the suspect was in the truck and Aguinaldo had stated that the

14

owner was waiting "far away" from the truck. A reasonable officer in Officer Thornton's position would have believed that one or both of the men by the truck were suspects. Faced with this knowledge, Officer Thornton's decision to display his firearm did not amount to a constitutional violation: he was outnumbered by individuals who he believed to have just committed a crime, and the truck partially obstructed Officer Thornton's view of the scene. Although, in hindsight, Officer Thornton could have accomplished his objective without immediately withdrawing his firearm, his decision to do so at the time did not violate Visconde's constitutional rights.

Officer Thornton's knee strike of Visconde was also reasonable. There is no genuine issue of material fact as to whether Officer Thornton instructed Visconde to get down on the ground: Ceredon got down on the ground (the reasonable inference therefrom being that Officer Thornton did, in fact, issue the command to get down), and Aguinaldo confirmed that Officer Thornton issued this command several times. There is no dispute that Visconde failed to obey these commands. Under the circumstances, Officer Thornton acted reasonably in using non-lethal means to secure the scene. The fact that Visconde allegedly experienced swelling,

pain, and trouble walking as a result of the kick does not render Officer

Thornton's response unreasonable under the circumstances.  *See Forrester*

*v. City of San Diego*, 25 F.3d 804, 807-08 (9th Cir. 1994) ("[T]he inquiry is

whether the force that was used to effect a particular seizure was reasonable,

viewing the facts from the perspective of a reasonable officer on the scene.

Whether officers hypothetically could have used less painful, less injurious,

or more effective force in executing an arrest is simply not the issue."

(Citation omitted.)).

Viewing the facts in the light most favorable to the Plaintiff,

however, there is a dispute as to whether Officer Thornton heard Aguinaldo

state that Visconde was the owner of the truck.  Visconde claims that if

Officer Thornton did, in fact, hear Aguinaldo say that Visconde was the

owner, then Officer Thornton acted unreasonably in striking Visconde.  As

an initial matter, Visconde's suggestion -- that Officer Thornton struck

Visconde even though he (Officer Thornton) knew that Visconde was the

owner of the truck -- is simply not reasonable.  *See Flynn v. Mills*, 361

F.Supp.2d 866, 874 (S.D. Ind. 2005) ("[I]t simply is not reasonable to

conclude that [the police officers] heard [fellow officers'] shouts and/or

radio communications--and therefore knew that [the plaintiff] was [a]

16

civilian witness--and shot [him] nonetheless.").  Additionally, even if

Officer Thornton heard Aguinaldo, Officer Thornton was not required to

believe him in these circumstances:  although Aguinaldo had pointed

Officer Thornton in the right direction, Officer Thornton had not gotten

Aguinaldo's name, identification, or other information to confirm that

Officer Thornton could trust the information he provided.  *See Graham*, 490

U.S. at 396-97 ("The calculus of reasonableness must embody allowance for

the fact that police officers are often forced to make split-second

judgments--in circumstances that are tense, uncertain, and rapidly

evolving--about the amount of force that is necessary in a particular

situation.").  Furthermore, even if Officer Thornton had heard Aguinaldo,

Officer Thornton was still faced with an individual who refused to comply

with his commands to get down on the ground and who, according to

Visconde's own admissions, continued to move away from the truck when

told to freeze.  Under the circumstances, the court concludes that Officer

Thornton's actions were reasonable as a matter of law and that Visconde's

Fourth Amendment rights were not violated.

### 2.    Officer Thornton's actions did not violate a "clearly established" constitutional right

Even if Officer Thornton's actions violated Visconde's Fourth Amendment rights, however, the court would nevertheless grant summary judgment in favor of the Defendant because Visconde has failed to demonstrate that Officer Thornton violated a "clearly established" constitutional right.

There is certainly clearly established law prohibiting police officers from exerting force over innocent individuals.  Nevertheless, the Supreme Court has explained that the court must determine whether the "clearly established" right exists in a more "particularized" sense; that is, the court must make its inquiry "'in light of the specific context of the case, not as a broad general proposition.'"  *Brosseau*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S. at 201).  Thus, in the instant case, the inquiry is whether a police officer violates a clearly established right by:  (1) pointing a firearm at two suspects in a car theft, where the officer is outnumbered and the officer does not know whether the suspects are armed; and/or (2) delivering a knee-strike to an individual who *may* be the owner of the stolen vehicle (or who may be the suspect in that theft) and who refuses to comply with police commands to get down on the ground.  The court concludes that a reasonable officer in Officer Thornton's position could have believed that

18

such a take down technique was a reasonably necessary means to subdue Visconde, such that his reaction was "within the bounds of appropriate police responses." *Saucier*, 533 U.S. at 208.  Officer Thornton did not violate a "clearly established" law, and the court concludes that qualified immunity is appropriate in this case.  *See Malley v. Briggs*, 475 U.S. 335, 341 (1986) ("As the qualified immunity defense has evolved it provides ample protection to all but the plainly incompetent or those who knowingly violate the law.").

Over fifty years ago, the Supreme Court cautioned that "[b]ecause many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part.  But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." *Brinegar v. United States*, 338 U.S. 160, 176 (1949).  Officer Thornton was confronted with information leading him to reasonably believe that Visconde and/or Ceredon were engaged in serious criminal activity.  While on the scene, having to make split-second decisions, Officer Thornton's use of force was measured and reasonably limited to achieve the purpose of the

investigatory stop -- to determine if Visconde and/or Ceredon were engaged in criminal activity and to preserve the public's safety.

Looking at the evidence in the light most favorable to Visconde, the court concludes that Officer Thornton's actions were reasonable and justified. Visconde attempts to hold Officer Thornton to a standard never demanded by the courts. Police officers "are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005)(quotations omitted). Officer Thornton steered well clear of that bright line, and is therefore entitled to qualified immunity.

B.    Visconde's state law claims for assault and battery are hereby dismissed

In Hawaii, the standard for determining whether a police officer is entitled to immunity from state law claims differs from the federal standard for determining whether an officer is entitled to immunity from federal claims. *See Wong v. City & County of Honolulu*, 333 F. Supp. 2d 942, 958-59 (D. Haw. 2004) ("Under Hawaii law, a non-judicial governmental official acting in the performance of a public duty enjoys the protection of immunity from liability from tortious conduct unless a plaintiff

provides 'clear and convincing proof that [the official] was motivated by malice and not by an otherwise proper purpose.'" (Quoting *Medeiros v. Kondo*, 55 Haw. 499, 505, 522 P.2d 1269, 1272 (1974).) (Alteration in original.)); *Medeiros*, 55 Haw. at 504, 522 P.2d at 1272 ("We are unwilling to deny plaintiffs a 'mere inquiry into malice.' This court has a strong preference for allowing all litigants their day in court. In balancing the mere inquiry into malice against the possibility of actual malice we find that the burden of a trial is outweighed by plaintiff's right to be heard on the merits of his case." (Footnote omitted.)). The Hawaii courts are better equipped to determine whether Visconde has alleged sufficient facts to overcome the threshold for summary judgment on a claim of actual malice, and the court makes no specific findings on this matter.

        Visconde's Complaint does not allege a basis for jurisdiction for his state law claim, but the court assumes that the claim was brought pursuant to 28 U.S.C. § 1367. Section 1367(c) provides in relevant part that a district court "may decline to exercise supplemental jurisdiction over a claim" if the court "has dismissed all claims over which it has original jurisdiction[.]" Inasmuch as the court has granted summary judgment as to Visconde's federal claim, the court declines to exercise supplemental

jurisdiction over Visconde's state law claim.  If Visconde wishes to pursue his state tort claim, he must do so in state court.

## V. <u>CONCLUSION</u>

For the foregoing reasons, this court GRANTS the Defendant's Motion for Summary Judgment as to Visconde's § 1983 claim.  The court DISMISSES Visconde's state law claim on jurisdictional grounds.  As this order disposes of all outstanding matters in this case, the clerk of the court is instructed to enter judgment in favor of the Defendants and close the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 2, 2006.

J. Michael Seabright
United States District Judge

*Visconde v. Thornton et al.*, Civ. No. 04-00595JMS/KSC, Order Granting Defendant's Motion for Summary Judgment